## Samuel B. Foster v. S. Swaback, Thomas D. Tansey et al.

1. MECHANIC'S LIENS.—*Fraud in Building Contracts.*—In proceedings under section 29, chapter 82, R. S., entitled " Liens," providing that if it appears to the court that the owner and contractor fraudulently, for the purpose of defrauding sub-contractors, fixed an unreasonably low price

in the original contract for the erection of a building, such fraud must be alleged and clearly shown by the evidence in order to authorize the court to act.

2. SAME—*Proceedings Under Section 29.*—A bill in equity filed under section 28, chapter 82, R. S., entitled "Liens," is not an appeal to the conscience of the court to do equity, but is a method to ascertain and dispose of purely statutory liens, and it is only persons having liens under the statute that a decree in favor of can be rendered.

3. MASTER IN CHANCERY—*Conclusions on Contradictory Evidence.—Fraud.*—On pure questions of fact the report of the master, where the evidence is voluminous and contradictory, carries with it much of the weight and conclusiveness which rightfully attaches to the verdict of a jury, but the question as to whether fraud follows from a state of facts is necessarily a mixed question of law and fact.

4. FRAUD—*Under the Mechanic's Lien Law.*—The fraud that is provided against under section 29, chapter 82, R. S., entitled "Liens," is that which has its inception between the owner and the original contractor for the ultimate purpose of defrauding the sub-contractor.

5. SAME—*Mistaken Opinion.*—A mistaken opinion as to the value of city lots is not equivalent to a fraud, as contemplated by section 29, chapter 82, R. S., entitled "Liens."

6. BUILDING CONTRACTS—*Limitations on the Power to Make.*—The owner and contractor may contract upon such terms as they can agree to, provided only that they do not fraudulently combine for the purpose of defrauding sub-contractors, by fixing an unreasonably low price for the building.

7. SUB-CONTRACTORS—*Right to Examine the Original Contract.*—The right of a sub-contractor to a lien depends upon the contract between the owner and the original contractor, and it is his privilege to inform himself about the terms of the original contract, and if not satisfied with them, to refuse to deal with the contractor.

8. SUB-CONTRACTOR'S LIEN—*Allowance of a Special Privilege.*—The allowance of a lien to a sub-contractor is a special privilege, and it is not unreasonable to require him to look to the principal contract to ascertain whether it is such as to justify him in becoming a contractor under it.

**Bill for a Settlement Under Section 29 of the Mechanic's Lien Law.**—Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the March term, 1895. Reversed and remanded. Opinion filed May 16, 1895.

APPELLANT'S BRIEF, SAMUEL W. JACKSON, ATTORNEY.

Sub-contractors are not given liens absolutely, but only upon complying with the statutes in regard to giving notice. The statute does not give a sub-contractor, me-

chanic, or person furnishing material to the original contractor a lien absolutely, without notice to the owner of the rights of such sub-contractor, mechanic or materialman. Butler v. Gain, 128 Ill. 23.

The statute giving a mechanic, a materialman or subcontractor a lien on the premises of the owner of a building erected or repaired, is in derogation of the common law, and is to be strictly construed; therefore, a party seeking a lien under its provisions must show a clear compliance with all the requirements of the statutes. Butler v. Gain, Id. 27; St. Louis National Stock Yards v. O'Reilly, 85 Ill. 546; Kelly v. Kellogg, 79 Ill. 477; Belanger v. Hersey, 90 Ill. 70; Carney v. Tully, 74 Ill. 375; Canisius v. Merrill, 65 Ill. 67; Cook v. Heald, 21 Ill. 429.

If the sub-contractor does not give notice no lien can be created. Shaw v. Chicago Sash and Door Co., 144 Ill. 520; St. Louis National Stock Yards v. O'Reilly, 85 Ill. 546.

This notice is only waived when the contractor makes the sworn statement as provided by the statute. Butler v. Gain, 128 Ill. 26; Shaw v. Chicago Sash and Door Co., 144 Ill. 527.

A sub-contractor's lien is limited to amount due original contractor. There is no privity of contract between the owner and sub-contractor whose lien depends upon the validity and terms of the original contract. Under the earlier acts no lien was allowed a sub-contractor. Dawson v. Harrington, 12 Ill. 300.

The money which may remain in the hands of the owner, and due to the original contractor, after all deductions are made to which the owner is entitled, is the fund, and the only fund, out of which the contractors are to be paid. Culver v. Ewell, 73 Ill. 536; Marski v. Simmerling, 46 Ill. App. 531.

Knowledge, by a sub-contractor upon a building, that there is an agreement in writing between the original contractor and the owner, is sufficient to put him upon inquiry as to the contents of the writing and charge him with notice thereof. Bowen v. Aubrey, 22 Cal. 566.

In the absence of fraud or misrepresentation by the owner, this presumption of full knowledge of the terms of the original contract is conclusive against all sub-contractors, laborers and materialmen, and they are bound by the terms of the original contract, so far as any claim upon the owner, or right of lien upon his premises under the statute, are concerned.    Henley v. Wadsworth, 38 Cal. 356.

To constitute actual fraud between two or more persons, to the prejudice of a third, contrivance and design to injure such third person, by depriving him of some right, or otherwise impairing it, must be shown.    Actual fraud is not to be presumed, but ought to be proved by the party who alleges it; and if the motive and design of an act may be traced to an honest and legitimate source equally as to a corrupt one, the former ought to be preferred.    Jackson v. McConnel, 1 Scam. 344.

It must be affirmatively shown like any other fact. Wright v. Grover, 27 Ill. 426; Schroeder v. Walsh, 120 Ill. 403.

H. C. BENNETT and W. A. PHELPS, attorneys for Edward Baggot and Orr & Lockett Hardware Co., appellees.

WILLIAM F. WIEMERS, for F. J. Switzer, appellee.

LYMAN M. PAINE, for Chicago Incandescent Light and Wiring Company, appellee.

IRA W. & C. C. BUELL, for Andrew Dressel, appellee.

PEASE & McEWEN, for John Henry and Elmer W. Evans, appellees.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was a bill filed by the appellant, the owner of a certain city lot therein described, for a general settlement under the provisions of Sec. 39, Chap. 82, Rev. Stat. Ill., pertaining to mechanic's liens.

The bill alleged *inter alia*, that on November 13, 1891, the appellant entered into a contract in writing with one Thomas

D. Tansey, whereby the said Tansey agreed to furnish all the material and labor required to erect and complete a three story and basement store and flat building for the appellant upon his said lot, according to certain plans and specifications, and to build and complete the same within one hundred days from said date in a good and workmanlike manner under the direction of the architect, and to the satisfaction of the appellant, for the consideration of $3,000 in money to be paid, and four certain lots, to be conveyed to said Tansey by the appellant.

According to the terms of the said contract, the cash part of the consideration was to be paid in installments, at specified times, and the lots were to be conveyed upon completion and acceptance of the building.

There was no valuation placed upon the lots agreed to be conveyed, and no value or cost of the building so as to be erected, named in the contract.

Tansey, and all persons who furnished labor and materials as sub-contractors in the erection of the building, and who had not been paid, and who claimed anything therefor, either under the statute relating to mechanic's liens, or otherwise, were made parties defendant to the bill, and most of them, including Tansey, answered, and some of them filed cross-bills.

The cause was referred to a master in chancery, who found and reported that twelve of said defendants furnished under contracts entered into between themselves, severally, and said Tansey, certain labor and materials, and that there remained due to them therefor several sums, exceeding, in the aggregate, the sum of $4,500.

The master also found that "the building to be erected under said contract could not be built by any contractor, allowing him a reasonable profit, for less than about $8,500;" that the four lots which Tansey had agreed to take did not exceed in value the sum of $1,200; that the appellant paid out to sub-contractors and to Tansey the sum of $3,862.45; and the master, upon the theory and finding by him that appellant, the owner, and Tansey, the contractor,

had fraudulently and for the purpose of defrauding sub-con-
tractors, fixed an unreasonably low price in their original
contract for the erection of said building, within the pro-
visions of section 29 of the mechanic's lien act, found and
reported that the appellant should pay to the respective
defendants, severally, their proportionate share of the dif-
ference between the sum of $8,550, which he had as above
found to be the cost value of the building, and the sum of
$3,862.45, paid by him on account thereof, and recommended
that in default thereof the premises of the appellant upon
which the building had been erected should be sold to satisfy
the same.

The decree of the court followed the master's report in
substance, and so much of it as is pertinent to and explana-
tory of the main issue involved, is as follows:

"That said Samuel B. Foster and Thomas D. Tansey
must have been aware at the time the contract was entered
into between them that the building could not be constructed
without a loss to the sub-contractors of from $3,000 to
$5,000, and the court finds that the case made out by the
defendants against said Foster and Tansey in this cause
comes within the provisions of section twenty-nine (29), of
chapter eighty-two (82), on mechanic's liens, wherein it is
provided that if it shall appear to the court that the owner
and contractor fraudulently, for the purpose of defrauding
sub-contractors, fixed an unreasonably low price to their
original contract for the erection or repairing of such build-
ing, then the court shall ascertain how much of a difference
exists between a fair price for the labor and material used in
said building or other improvement, and the sum named in
said original contract, and said difference shall be consid-
ered as a part of the contract, and shall be subject to lien.

And the court finds that a fair price for the construction
of the building aforesaid, at the date of the construction
thereof was eight thousand five hundred dollars ($8,500) in
money; that complainant has paid out on said building the
sum of three thousand eight hundred and sixty-two dollars
and forty-five cents ($3,862.45) leaving a balance of four

thousand six hundred and thirty-seven dollars and fifty-five cents ($4,637.55) which should have been paid over by complainant on the date of the filing of the bill herein, and which equitably should bear interest from the date of the master's report herein at the legal rate.

And the court further finds that although certain lots are mentioned in said contract to be paid for the erection of said building, that the complainant is estopped, as against the sub-contractors herein, by reason of the fraud aforesaid, and as set out in .the master's report, from claiming the right to have the said lots applied toward the payment of claims made herein. That said lots were worth, at the making of said contract, not to exceed $1,200, and said Foster is estopped to deny that the contract price is payable in money; and the court therefore finds that enough of said balance of $4,637.55, with interest, should be divided among the several parties hereinafter adjudged to be entitled to share therein."

The decree then proceeds to apportion among the several defendants their respective shares of said balance, and to adjudge to them, respectively, liens upon the premises upon which the building was erected, and to order a sale thereof, if the said balance is not paid by appellant or said Tansey, within a time named.

We omit discussion of the fact that is not disputed, that the largest part of the claims decreed to be liens were never protected by the service of the notice required by the statute, in the assurance that when it becomes important, as it will, to such of the defendants as have served requisite notices, to see that proper attention of the master and court is called to the statutes and decisions upon that subject, as against the other defendants, it will be done.

A bill of this kind is not an appeal to the conscience of the court to do equity, but is a method to ascertain and dispose of purely statutory liens. Under section 39, it is only persons having liens under other provisions of the mechanic's lien statute, that a decree in favor of can be rendered.

Whether in case of a surplus remaining due from the

owner to the contractor, after satisfying all persons having liens, the court, under a bill like the present one, would distribute it upon equitable principles among such persons as were equitably entitled to it, as against the original contractor, is a question not before us.

A discussion bearing upon that question is in Newhall v. Kerstens, 70 Ill. 156, which was a bill, in the nature of a bill of interpleader, filed before section 39 was enacted.

Aside from what seems to be a fatal objection to the decree in that it gives liens, and orders a sale of the premises, in favor of persons who are not statutory lienors, the important question is, was such a case of fraud between the owner and the original contractor made out as is contemplated by section 29, referred to in the decree?

The decree is that respect follows the master's findings, and we are required to look to the master's report to ascertain what facts were proved to justify such findings.

On pure questions of fact the report of a master, where the evidence is voluminous and contradictory, carries much of the weight and conclusiveness rightfully attached to the verdict of a jury.

But whether fraud follows from a state of facts is necessarily a mixed question of law and fact.

The fraud that is provided against by section 29 is that which has its inception between the owner and the original contractor for the ultimate purpose of wrong to the subcontractor.

In all the legislation that has been had for the purpose of giving a lien to mechanics and materialmen, it has never been undertaken to provide that the owner and contractor may not contract upon such terms as they may agree to, provided only that they shall not fraudulently combine for the purpose of defrauding sub-contractors, by fixing an unreasonably low price for the building.

It is always the privilege of any party who contemplates furnishing material to an original contractor to inform himself about the terms of the original contract, and if not satisfied with it to refuse to sell to the contractor. To such as

do not, the mechanic's lien statute is a "delusion and a snare." Goodman v. Fried, 55 Ill. App. 362.

"It is the law that the right of a sub-contractor to a lien depends upon" the contract of the original contractor. Julin v. R. P. M. Co., 54 Ill. 460; Phillips on Mechanics' Liens, Sec. 62.

"The allowance of any lien at all to a sub-contractor is a special privilege, * * * and it is not unreasonable to require him to look to the principal contract to ascertain whether it is such as to justify him in becoming a contractor under it." Phillips on Mechanics' Liens, Sec. 58.

Some of the sub-contracting defendants did take at least some steps to become informed of the original contract, and others did not. Whether with or without information of its terms, the several defendants did enter into sub-contracts with Tansey under which they furnished the materials and labor for which they have been decreed liens.

Now, unless there was such fraud committed as is contemplated by the statute, they are confined to the terms of the original contract, and are not entitled to the relief given by the decree.

The provisions of section 29, relating to the fraudulent combination of the owner and original contractor, are sufficiently set out in that portion of the decree above copied.

The decree, following the language of the master's report, finds that appellant and Tansey "must have been aware at the time the contract was entered into between them that the building could not be constructed without a loss to the sub-contractors of from $3,000 to $5,000, and such finding is the only one of fraud that the decree makes in support of its conclusion that, therefore, the provisions of section 29 are applicable.

The finding that appellant and Tansey "must have been aware" that a loss of from $3,000 to $5,000, would ensue to sub-contractors, has for its only support the other fact found by the master, that the four lots which Tansey was to accept in part payment, were worth only $1,200.

Had those lots been worth $4,000, or upward, there is

no pretense that "an unreasonably low price" for the building would have been fixed.

What was the belief of the owner and contractor as to the value of the lots?

The appellant testified that he considered them worth from $4,400, upward. Tansey testified that before entering into the contract he went and looked at the lots, and that he was told by the town assessor that they were worth $1,000 each, and that he signed the contract after making such investigation. It is not questioned but that appellant owned the lots, nor but that his conveyance of them to Tansey by warranty deed, as he contracted to do, would have vested a good title in Tansey.

The lots appear to be located about eight miles in a westerly direction from the business center of the city of Chicago, and that witnesses should have testified that they were worth only $1,200, when, in the estimate of others, they were worth $4,000, or more, is but the corroboration of an every-day observation in the matter of placing valuations upon real estate in the large and growing city of Chicago, and a court should be slow to find that a mere over-valuation of the lots by the parties to the contract, was sufficient, in itself, to establish the fraud contemplated by the statute in question. A mistaken opinion under such circumstances is not equivalent to fraud.

Tansey testified that at the time of signing the contract he had between $2,200 and $2,300 in cash on hand, and that he thought the building would cost inside of $6,000.

The appellant was a practicing lawyer, and there is no evidence that he had experience in building that would qualify him to estimate, with much accuracy, the cost of the proposed building, but he testified that he placed its value at $6,500 or $7,000; and it appears that a building, after which the building in question was copied, cost $7,400 or $7,600. And both the appellant and Tansey deny that there was any preconceived plan on their part to defraud anybody.

The fraud against sub-contractors that will justify what

was decreed by the court below is in fixing an unreasonably low contract price for the building by the owner and contractor.

The master's report, which formed the basis for the decree, evidently was made upon the theory that fraud practiced at any time upon the sub-contractors by the appellant, was sufficient to bring the case within the provisions of section 29 of the statute.

Upon the subject of what fraud was practiced, aside from the value of the four lots, the principal brief for appellees on the subject of fraud, summarizes as follows, and we will presume makes as favorable a statement for appellees as a reasonably fair comment upon the evidence would warrant, viz:

" The testimony shows that Tansey was a semi-worthless, drunken sort of a character, who had done various work for Foster in the past, and who lived down on Justin street in the town of Lake. Foster industriously circulated false reports of Tansey's financial standing. He told Dressel that Tansey was rich; told Stripleman that Tansey was honest and had property; told Switzer that Tansey had property down on Justin avenue in his own name and was worth $18,000. The record shows that the property on Justin avenue was conveyed by Foster to Tansey's wife in 1889, for a consideration of $2,500, and that the property was not worth over $2,500. Foster told Evans that Tansey had a fine place down where he lived, and was worth $15,000. Whenever any sub-contractor went to Foster, asking him about payments, Foster invariably told him that he would protect him, and led them to believe that there were moneys coming to Tansey upon the contract. The evidence shows that Foster paid out over $800 over the $3,000 in cash, and now says that he did it through an oversight. A simple examination of the record will show that Mr. Foster used great care in getting contractor's statements and great caution in making payments—those which he did make—and it is impossible of belief that Mr. Foster would pay out nearly $1,000 over the amount specified in

the contract and be insensible and unconscious of such over-payment. The only consistent conclusion to draw from such over-payment is that Foster knew that if he quit paying out at the $3,000 mark, that the materialmen would quit delivering and that his building would stop where the loss would mainly fall on him. On February 18th, the evidence shows that he paid out $2,870, and on February 29, 1892, he paid $400, running over by that payment the $3,000 limit. The building was not completed until after May 1st. Every conversation which Foster ever had with any of the sub-contractors was a conversation calculated to lull them to sleep and make them believe that they would receive their money for the material furnished by them."

The issue presented is whether there was fraud between the owner and the contractor, within the statute, and not whether appellant made fraudulent representations concerning Tansey, after the latter had made sub-contracts with the appellees, nor whether appellant had estopped himself from denying his liability to appellees by undertakings on his part to pay them for what they had contracted to do for Tansey.

We do not regard the record as containing sufficient proof of facts and circumstances to warrant the decree that there was such fraud between appellant and Tansey in fixing the contract price as to call for the interposition of the provisions of section 29, upon the subject of fraud.

Such a variety of questions may arise between the appellant and the several defendants, and between such defendants themselves, concerning the matter of whether liens have been saved by due compliance with the statute by all or either of the defendants, and in other respects which we will not attempt to enumerate, and which have been unimportant upon the record as made, and have therefore not been argued fully, that we refrain from expressing any directions concerning them.

With the main question disposed of that no such fraud has been proved as is contemplated by the statute relied

upon, and that because thereof, the decree must be reversed, and the bill being properly filed, it will be safer to leave to the Circuit Court the determination of the relative rights of the various parties upon a further hearing and consideration thereof.

The motion of appellees Henry and Evans to strike from the record certain documents purporting to be exhibits contained within the certificate of evidence is denied.    See Wolcott v. Lake View Building and L. Association, 59 Ill. App.

The decree of the Circuit Court is reversed and the cause remanded.