## Edwin C. Walker et al. vs. R. G. Johnson.

1. GAMBLING CONTRACTS—*What Are.*—If it is the mutual intention of parties at the time of entering into an arrangement to deal in grain that no grain is actually to be received or delivered on their transactions but that the same are to be settled upon the differences alone in the market price at which the grain is bought and sold, then such transactions are gambling.

Assumpsit, for money had and received. Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Heard in this court at the March term, 1895. Affirmed. Opinion filed July 5, 1895.

Walker & Eddy, attorneys for appellants.

D. M. Kirton, attorney for appellee.

Mr. Justice Gary delivered the opinion of the Court.

This case was tried by the court without a jury. The finding was in favor of the appellee for $1,194.41, from which he remitted $200, and took judgment for $994.41.

The appellee resided in Cincinnati, and the appellants were commission merchants in Chicago.

Under orders from the appellee the appellants bought and sold stocks, puts and calls on grain, and grain and pork for future delivery. To secure the appellants against loss, as they contracted in their own name, the appellee advanced money to the amount of several thousand dollars, which was lost in the business. The appellee was probably only an agent for undisclosed parties who paid him commissions.

The appellant Walker, as a witness, testified, as reported in the abstract, that the "arrangement" between the appellants and the appellee was "substantially as follows: He was to pay half the wire rent and send us orders over the wire, to be filled here on the Chicago Board of Trade, or on the New York Exchange, and that he should keep up the margins of from two to three points on grain and five per cent on stock; that he should deposit in the bank in Cincinnati, to our credit, any amount we might call him for in the transaction of this business.

I distinctly told Mr. Johnson that I was very particular about margins, and our rule was, if margins were not put up at the expiration of where the money gave out, the transaction should be closed at once, the same as we do with all our customers, especially out of town customers. He said that would be perfectly satisfactory, and that is the way the business was transacted. He was to have one-half of the commission, which amounted to one-sixteenth on all grain. The full commission was one-eighth. On all orders for grain, he was to have one-half of the regular commission.

A private wire was leased between his office and ours, he to pay one-half the rent. The rent of the wire was $500 a month. The money for margins was to be deposited to our credit in Cincinnati."

The appellee sued to recover, apparently, his losses as money had and received by the appellants to his use, though as a witness the burden of his complaint was a wrongful selling out, at a loss, 20,000 bushels of oats.

It requires very little knowledge of the ways of the world to see that such show of business as these parties conducted with each other is very often a mere varnish on what the law calls gaming, and when it is but a varnish, then we have the authority of the Supreme Court—no less would convince us—that one who, under orders from another, has incurred and paid losses, is the winner of the money by him lost and paid, because there can be no agency in crime. Pearce v. Foote, 113 Ill. 228.

On the trial the court held as a proposition of law—and so holding implies that it was applicable to the facts of the case as the court found them to be—as follows:

" The court holds, as a matter of law, that if it was the mutual intention of both the plaintiff and defendants, at the time the transactions in question were entered into, that no grain or other commodity was to be actually received or delivered on said transactions, but that the same were to be, and in fact were, settled as between the plaintiff and the said defendants upon the difference alone in market price at which said grain or other commodity was sold and bought, then such transactions are gambling; and if said plaintiff deposited with the defendants the sum of $9,000, or any other sum of money, which was lost on said transactions, over and above any gain on account of the same, then the plaintiff is entitled to recover from the defendants the sum so lost."

Under this holding, only the modesty of the appellee prevented a recovery of about ten times the present judgment.

That the appellants intended no gambling with the parties with whom they contracted, but on the contrary intended to take and pay for what they bought, and deliver

what they sold, cuts no figure, if they knew that the appellee intended gambling, or but for their own obstinacy, would have so known.

Upon the evidence we can not say that the court was wrong on the facts, nor, under the case cited, can we say that the court was wrong on the law, and therefore the judgment is affirmed.