# Malcolm M. Jamieson, Roland C. Nickerson, Irving H. Waggoner and Henry F. Billings v. Mary Wallace.

1. GAMBLING CONTRACTS—*Right of the Loser to Recover Back his Collaterals.*—Under orders from the appellee, appellants, who were brokers and bankers, bought and sold stocks in their firm name on her account; she leaving with them convertible securities to secure them against loss in the transaction. There was a loss. She filed a bill to compel a restoration to her of such securities as had not been converted and payment for such as had been. A decree was rendered in her favor upon the theory that the transactions were gambling contracts, and illegal and void. *Held*, the decree was proper.

2. MASTER'S REPORT—*Conclusive.*—The report of a master upon questions of fact is as conclusive as the verdict of a jury.

In Equity.—Bill for relief. Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed December 2, 1895.

EGBERT JAMIESON and JOHN A. ROSE, attorneys for appellants.

PENCE & CARPENTER, attorneys for appellee.

MR. PRESIDING JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

Under orders from the appellee, the appellants, who were bankers and brokers, bought and sold stocks in their own firm name of Jamieson & Co., on account of the appellee, she, to secure them against loss in the transactions, leaving with them convertible securities. At first there was a profit, which they paid to her. Then a large loss.

This bill is filed to compel a restoration of such securities as have not been converted, and payment for such as have been, and a decree has been rendered in her favor, upon the theory that the transactions between the parties "were gambling contracts and transactions, and illegal and void." Many cases in this State, where the contest has been

whether the broker should recover his advances and commissions, have held that, if from all the circumstances the fair inference or conclusion be, that not only did the principal not intend to receive or deliver the property for which the broker, on the principal's account and under his order, made a contract for purchase or sale, but on the contrary intended to close the transaction, through the broker, by a counter contract for a sale or purchase, looking to the broker for the profit hoped for, and promising to indemnify the broker against loss, should there be any, and the broker had actual or constructive notice that such was the intention of the principal, and assented thereto, in such a case the broker can recover no commissions, nor reimbursements of the losses he has paid to parties with whom he dealt for his principal, because the transactions are gambling transactions, and *ex turpi causa non oritur actio.*

The fact that the broker actually buys and receives, or sells and delivers, or that he makes valid contracts of purchase or sale, which he intends to, is bound to, and actually does perform—that as between himself and the other party with whom he makes the deals, the business is perfectly legitimate and lawful—are all immaterial in controversies with his principal, if the principal did not intend to receive or deliver, but to make counter trades, speculating upon the differences, and the broker having notice of that intention, assented thereto. It is not enough that the principal so intended, if the broker had not notice of such intention; nor that in fact the transactions, though numerous, were so closed; but the number of transactions, uniformly so closed, in connection with the avocation and pecuniary condition of the principal, may be evidence both of the principal's intention, and of notice to, and assent by, the broker. Beveridge v. Hewitt, 8 Ill. App. 467, Kennedy v. Stout, 26 Ill. App. 133, and Wheeler v. McDermid, 36 Ill. App. 179, with the cases cited in them, are enough authority to refer to.

But here the question is not whether the broker shall recover, but shall he pay back?

The *turpi causa* would, if the question were new, seem to

be a two-edged weapon, of which neither edge was for offense, but both for defense.

It is too late for us to inquire what the law ought to be. By holding as a fact that in cases of the character that this had been adjudged to be, the broker and principal are betting with each other on the price of commodities dealt in, and that if a loss accrues which the broker first pays to the party with whom he contracted, and then the principal pays the broker, the principal has lost and the broker has won, and then holding as law that the loser may recover from the winner, the Latin maxim quoted is left out of the case. Kennedy v. Stout, 26 Ill. App. 133, and cases there cited.

I have already said quite as much, probably, as I ought to say about that doctrine. Elder v. Talcott, 43 Ill. App. 439; Walker v. Johnson, 59 Ill. App. 448.

When—if ever the case arises—a broker shall seek to recover back from his principal profits which have been made in such transactions, and which have been paid over by the broker to the principal, the same question in principle will be presented, with features that will make the moralizing in Pearce v. Foote, 113 Ill. 228–239, and Cothran v. Ellis, 125 Ill. 496–501, seem inappropriate.

Had the decisions been that such a course of business between the broker and principal was against public policy, *contra bonos mores*, and that tl e efore the law would leave the parties where it found th(m the doctrine would have been comprehensible, and with n the principle of Shaffner v. Pinchback, 30 Ill. App. 355; 133 Ill. 410.

Upon a reference to a master, he found that the transactions were gambling.

We need not recite the evidence. The report is as conclusive as the verdict of a jury. Green v. Hadenberg, 55 Ill. App. 425; Foster v. Swaback, 58 Ill. App. 581; Friedman v. Schoengen, 59 Ill. App. 376.

We only need say that the evidence was such that the report of the master, concurred in by the court, was not unwarranted, if the cases referred to are to govern.

The decree is affirmed.